UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY EVERETT HOOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-00240-SEB-CSW |
| ) | |
| GREYHOUSE, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFF'S MOTION FOR CLARIFICATION**

Plaintiff Timothy Hoover, who is incarcerated by the Indiana Department of Correction ("IDOC"), alleges in this lawsuit that, when he was confined at Pendleton Correctional Facility ("PCF"), he was kept in segregation in violation of his Eighth and Fourteenth Amendment rights.[1] Mr. Hoover's Eighth Amendment claims were dismissed without prejudice for his failure to exhaust his available administrative remedies as to those claims. Dkt. 49. Mr. Hoover and the defendants now seek summary judgment on Mr. Hoover's Fourteenth Amendment due process claims.[2] For the reasons below, the defendants' motion for summary judgment, dkt. [74], is

---

[1] As explained in the Court's screening order, dkt. 14, while Mr. Hoover references time when he was incarcerated at other facilities, he named only employees at PCF as defendants in this case and clearly states that the events that form the basis of his complaint took place between April 22, 2021, and November 3, 2021. Dkt. 14 at 2. This ruling, therefore, focuses on this timeframe and Mr. Hoover's allegations that he was wrongly kept in segregation at PCF during this time.

[2] In support of his request for summary judgment, Mr. Hoover again expresses concern with the fact that the defendants have filed a second summary judgment motion. *See* dkt 83 at 2. But, as the Court has already explained, because the defendants sought summary judgment on the defense that Mr. Hoover failed to exhaust his available administrative remedies on his Eighth Amendment claim, it was appropriate for the defendants to file multiple motions for summary judgment. Dkt. 82.

**GRANTED**, and Mr. Hoover's motion for summary judgment, dkt. [83], is **DENIED**. His motion for clarification, dkt. [85], is **GRANTED** only to the extent that that filing has been considered.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427,

429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
## Factual Background

Although both Mr. Hoover and the defendants have sought summary judgment, the evidence viewed in the light most favorable to Mr. Hoover shows that the defendants are entitled to summary judgment and that Mr. Hoover cannot succeed on his claims. Therefore, the Court recites the facts in the light most favorable to Mr. Hoover.

**A. The Parties**

Mr. Hoover was transferred from New Castle Correctional Facility ("NCCF") to PCF on January 22, 2021. Dkt. 75-1 at 2 (Offender Traffic History); dkt. 75-2 ¶ 4 (Greathouse Aff.). When he was transferred, Mr. Hoover was placed on Department Wide Restrictive Status Housing ("DWRSH") because he failed to complete the STAND program at NCCF. Dkt. 75-2 ¶ 4-5.[3] The STAND program is for inmates who have difficulty staying in general population. Dkt. 75-3 ¶ 6-7. The decision to place or remove an inmate from DWRSH is made by the IDOC central office. *Id.* ¶ 6.

Tabitha Cochran was the casework manager in G Cell House. Dkt. 75-3 ¶ 2. Mr. Hoover was not part of her personal caseload. *Id.* ¶¶ 4-5. As a casework manager, Ms. Cochran's only involvement in removing an inmate from DWRSH was to make a recommendation to the

---

[3] In support of his motion for summary judgment, Mr. Hoover argues both that the defendants are correct that he failed to complete the STAND Program, dkt. 83 at 6, and that he "did [his] STAND program case plan successfully," *id.* at 7. Whether Mr. Hoover successfully completed the STAND program, however, is ultimately immaterial to Mr. Hoover's claim that after he was transferred to PCF, he was wrongly kept in DWRSH.

supervisor of classification. *Id.* ¶ 9. She otherwise had no authority over when Mr. Hoover would be released from DWRSH. *Id.* ¶ 11.

Tim Greathouse[4] was the unit team manager for G Cell House while Mr. Hoover was incarcerated there. Dkt. 75-2 ¶ 2. As the unit team manager, his only involvement in removing an inmate from DWRSH was to recommend to IDOC central office that an offender be removed to general population. *Id.* ¶¶ 6-7.

Defendant Knox was a casework manager and defendant Pfleeger[5] is a correctional lieutenant at PCF. Dkt. 26 at 2.

Defendant VcKov was a caseworker within G Cell House at PCF. Dkt. 75-6 ¶ 3 (VcKov Aff.). As a caseworker, she was not involved in the final decision to place or remove an offender from DWRSH. *Id.* ¶ 6. Her only involvement in classification changes for inmates on DWRSH was to make recommendations to PCF administrators, who would then make a recommendation to IDOC central office, who had the ultimate say in whether an offender is removed from DWRSH. *Id.* ¶ 7.

**B. Mr. Hoover's Time in DWRSH**

While Mr. Hoover was in G Cell House, he received weekly classification reviews for his first 60 days, and after that he began receiving 30-day reviews. Dkt. 75-2 ¶ 8. For example, Mr. Hoover's review from March 3, 2021, included notes that he asked for an appeal form and was working on intervention and goals to come off DWRSH. Dkt. 75-4 at 9 (Classification documents). It also states, "to be considered for release from DWRSH-A, an offender must have at least 9

---

[4] Mr. Hoover identifies this defendant as "Greyhouse" in the complaint.

[5] Mr. Hoover identifies this defendant as "Kleeger" in the complaint.

months at this facility, be A&B conduct clear for 1 year, and C&D conduct clear for 9 months." Dkt. 75-4 at 9. Ms. VcKov and Mr. Hoover signed this review. *Id.*

At Mr. Hoover's 90-day review, held on April 22, 2021, the unit team recommended his release from DWRSH to general population. Dkt. 75-2 ¶ 8; Dkt. 75-3 ¶ 10; Dkt. 75-4 at 6. The defendants communicated to each other in April that Mr. Hoover was recommended for release from DWRSH. Dkt. 75-5 at 6. (Emails).

Despite the recommendation, Mr. Hoover was not transferred out of DWRSH until November 2021. Dkt. 75-1 at 2. He wrote to the defendants regarding his situation and requesting to be moved to general population. *See* dkt. 83-1 at 6-8. In response to one of his requests, Ms. VcKov notified him that his ultimate transfer to general population was up to central office. *Id.* at 6. Similarly, in response to a request for interview from Mr. Hoover, Mr. Greathouse responded, "I sent notice again via email." *Id.* Indeed, the defendants did follow up with administrators to inquire about why their recommendation that Mr. Hoover be moved to general population had not been approved. *See* dkt. 75-5 at 1; dkt. 1-1 at 6, 8; dkt. 75-2 ¶ 12. Mr. Hoover was transferred from DWRSH on November 2, 2021, based on an "Administrative decision." Dkt. 75-1 at 2.

### III.
### Discussion

In support of their motion for summary judgment, the defendants argue that they provided him meaningful reviews and that they were not involved the decision to keep Mr. Hoover in DWRSH between April 22, 2021, and November 2, 2021.

#### A. Meaningful Review

State prisoners have a liberty interest under the Fourteenth Amendment's Due Process Clause in avoiding indefinite or prolonged assignments to segregation units that impose "atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." *Wilkinson*

5

*v. Austin*, 545 U.S. 209, 223 (2005); *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). To comply with due process, prison officials must periodically conduct informal and non-adversarial reviews to ensure that administrative segregation does not become a pretext for indefinite confinement. *Isby*, 856 F.3d at 525. "The [periodic] review need not be extensive, ... [b]ut the review must be meaningful; it cannot be a sham or a pretext." *Id.* at 527. In addition, the reviews need not adhere to rigid timelines. "The periodic review need only be sufficiently frequent that administrative segregation does not become 'a pretext for indefinite confinement of an inmate.'" *Westefer v. Neal*, 682 F.3d 679, 686 (7th Cir. 2012) (quoting *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983)).

After his transfer to PCF in January of 2021, Mr. Hoover received weekly classification reviews for his first 60 days, and after that he began receiving 30-day reviews. Dkt. 75-2 ¶ 8. Notably, Mr. Hoover's review from March 3, 2021, included notes that he was working on intervention and goals to come off DWRSH. Dkt. 75-4 at 9 (Classification documents). It also states, "to be considered for release from DWRSH-A, an offender must have at least 9 months at this facility, be A&B conduct clear for 1 year, and C&D conduct clear for 9 months." Dkt. 75-4 at 9. Then, his April 22 review recommended his release from DWRSH. Dkt. 75-4 at 6.

As discussed in the Court's screening order, Mr. Hoover's claims focus on his allegation that he was wrongly kept in DWRSH between April 22 and November 2, 2021. He has designated no evidence that his April 22 review, which recommended his release, was not meaningful. *Id.* Further, to the extent he can be understood to challenge other reviews, he has designated no evidence that the reviews he received either before or after April of 2021, including his March 3 review, which stated that he was working on intervention and goals, among other things, was not timely or meaningful. *Id.* at 9.

6

Because Mr. Hoover has designated no evidence that the defendants denied him meaningful review of his placement in DWRSH, they are entitled to summary judgment on this claim.

**B. Personal Responsibility**

"[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). It is undisputed that the defendants recommended Mr. Hoover's release from DWRSH in April of 2021. Dkt. 75-2 ¶ 8; Dkt. 75-3 ¶ 10; Dkt. No. 75-4 at 6. It is also undisputed that after this recommendation they had no further authority over that decision. Although Mr. Hoover contends that it was the defendants' job to ensure he was moved after they recommended his release from DWRSH, *see* dkt. 83 at 2, he has designated no evidence to support his argument that they had the authority to do so without the approval of the IDOC Central Office.[6]

---

[6] To the extent that Mr. Hoover references IDOC Policies, dkt. 83 at 2, he did not include those policies as exhibits to his summary judgment filings. Moreover, according to the Court's research, IDOC's Policy on Disciplinary Restrictive Status Housing, Number 02-04-102, provides that, "Any release from the Department-wide disciplinary restrictive status housing unit, other than a scheduled release or transfer by the assigned Executive Director of Adult Facilities and contracted Mental Health Director due to the offender's mental illness, requires a review and approval of the Deputy Commissioner of Operations." State of Indiana, Indiana Department of Correction, *Disciplinary Restrictive Status Housing*, at p. 13, available at https://www.in.gov/idoc/files/02-04-102-DRSH-1-1-2018.pdf (last visited Aug. 8, 2024). Similarly, the current policy on Administrative Restrictive Housing provides, among other things: "An offender who has been assigned to a Department-wide administrative restrictive status housing unit shall be released only with the approval of the Treatment Team, the assigned Executive Director of Adult Facilities, the Executive Director of Classification, the Deputy Commissioner of Operations, or the Commissioner." State of Indiana,

Because there is no evidence that the defendants were personally responsible for the decision to keep Mr. Hoover in DWRSH beyond the date that they recommended his release, they are entitled to summary judgment on the claim that Mr. Hoover was wrongly kept in DWRSH.[7]

## IV.
## Conclusion

As discussed above, the defendants' motion for summary judgment, dkt. [74], is **GRANTED**. Mr. Hoover's motion for summary judgment, dkt. [83], is **DENIED**. Mr. Hoover's motion for clarification, dkt. [85], is **GRANTED** to the extent that the arguments in that motion have been considered. The **clerk shall amend** the docket to reflect that defendant Greyhouse's name is spelled Greathouse and defendant Kleeger's name is spelled Pfleeger.

Final judgment consistent with this Order and the order granting the defendants' motion for summary judgment on Mr. Hoover's Eighth Amendment claims based on the failure to exhaust his available administrative remedies, dkt. 49, shall now issue.

**IT IS SO ORDERED.**

Date: 8/30/2024

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

Indiana Department of Correction, *Administrative Restrictive Status Housing*, Number 02-01-111, at p. 17, available at https://www.in.gov/idoc/files/policy-and-procedure/policies/02-01-111-ARSH-10-1-2021.pdf (last visited Aug. 8, 2024). Thus, it appears, as the defendants argue, that IDOC policies require approval from IDOC executive officials to remove someone from restrictive housing.

[7] Because the Court has found that it is undisputed that the defendants did not violate Mr. Hoover's right to meaningful review of his placement in segregation, it need not address their argument that they are entitled to qualified immunity. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013) ("To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct.").

8

Distribution:

TIMOTHY EVERETT HOOVER
124523
BRANCHVILLE - CF
BRANCHVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel